IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Virginia

WILLIS NORTH AMERICA INC.,

    Plaintiff,

v.                         Civil Action No. 3:10cv462

AARON S. WALTERS,

    Defendant.

## MEMORANDUM OPINION

Plaintiff, Willis North America Inc., ("Willis" or "the Plaintiff") filed this diversity action seeking judgment under Virginia law against Defendant Aaron S. Walters ("Walters" or "the Defendant") "in an amount in excess of Seventy Five Thousand Dollars ($75,000), pre- and post-judgment interest, plus other such and further relief as is just and proper."

The Defendant filed a MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (Docket No. 8). The Plaintiff responded to the motion, and the Defendant filed a reply. Thereafter, on Plaintiff's motion, the Court permitted supplemental briefing by both parties.

## BACKGROUND

Willis seeks to recover wages and benefits allegedly paid to Walters between February 15, 2009 and October 15, 2009 due to "an administrative oversight." Compl. ¶¶ 18, 20. Willis alleges that

between these dates, "Willis paid Walters salary and benefits in excess of $75,000," that Willis requested repayment from Walters, and that Walters has refused to repay the amounts erroneously paid to him. Compl. ¶¶ 22-24. Walters worked for Willis but tendered his resignation by letter dated January 29, 2009 with an effective date of February 15, 2009. Compl. ¶ 15. Due to "an administrative oversight," Walters was not removed from Willis's payroll system but continued to receive salary payments through October 15, 2009. Compl. ¶ 18. Willis alleges three causes of action: (1) payment by mistake; (2) unjust enrichment/monies paid and received; and (3) conversion. Compl. ¶¶ 25-37.

In his motion to dismiss, Walters states that he "only received payment of $57,259.79 from Willis during this time period," and that, therefore, the amount in controversy requirement is not met and the matter should be dismissed for lack of subject matter jurisdiction. Def.'s Mem. in Supp. of Mot. to Dismiss for Lack of S.M.J. ("Def.'s Mem.") at 1.

### DISCUSSION

The Defendant contends that the Complaint fails to demonstrate that the amount in controversy exceeds the $75,000 jurisdictional threshold required by 28 U.S.C. § 1332(a). In support of this point, the Defendant contends, citing Walters' affidavit, that after his separation from employment on February

2

15, 2009, "Walters received from Willis funds totaling no more than $57,259.79." Def.'s Mem. at 3, citing Affidavit of Aaron S. Walters ("Walters Affid."), ¶¶ 7, 14. Walters also states that he "received no other funds or benefits from Willis during that time period." Def.'s Mem. at 3, Walters Affid. ¶¶ 8-14. Walters contends that although Willis initially contributed $2,568.75 to Walters' 401(k) account, Willis thereafter unilaterally withdrew that sum, plus earnings, from Walters' 401(k) account. Def.'s Mem. at 3, Walters Affid. ¶ 13. Further, although Willis initially reported that it withheld funds with which to pay federal and state taxes on Walter's post-separation pay, on or about March 3, 2010, Willis forwarded a "Corrected Wage and Tax Statement" to Walters indicating that Willis only considered Walter's taxable wages for 2009 to be $19,703.84, equal to the gross amount Walters was paid prior to his separation from employment. Def.'s Mem. at 3, Walters Affid. ¶ 10. The Corrected Wage and Tax Statement also reports corrected and reduced amounts of taxes withheld. Lastly, with regard to employment benefits, including healthcare benefits and life insurance benefits, Walters states that he never utilized any such benefits nor was he aware from Willis that such benefits were available for his use. Def.'s Mem. at 3, Walters Affid. ¶ 11. Further, on or about December 14, 2009, Willis informed

Walters that Willis had terminated Walter's healthcare benefits retroactive to February 16, 2009, and that Walters was eligible to purchase COBRA benefits to address his health insurance needs for that period. Def.'s Mem. at 3, Walters Affid. ¶ 12. Thus, Walters argues that "because it appears to a legal certainty that Willis's claim cannot exceed $57,259.79," the complaint must be dismissed as a matter of law for lack of subject matter jurisdiction. Def.'s Mem. at 6.

In its response to the motion to dismiss, Willis includes an affidavit from Tina Secrist, Supervisor of Payroll Administration ("Secrist Affid."), that states that between February 28, 2009 and October 15, 2009, Walters' gross pay was $91,495.08 and that when "benefit credits paid by Willis on Mr. Walters' behalf are included, the total paid to Mr. Walters by Willis increases to $94,083.88." Pl.'s Resp., Secrist Affid. ¶ 4. Secrist also states that the amounts paid included withholdings for federal and state taxes, social security taxes and other deductions from gross pay, and she states that Walters in fact owes Willis a total $82,321.66. Pl.'s Resp., Secrist Affid. ¶¶ 6-9.

Motions to dismiss for lack of subject matter jurisdiction are decided under Fed. R. Civ. P. 12(b)(1). In considering such a motion, "[t]he plaintiff bears the burden of proving

that subject matter jurisdiction properly exists in the federal court." Biktasheva v. Red Square Sports, Inc., 366 F. Supp. 2d 289, 294 (D. Md. 2005). "When a defendant challenges subject matter jurisdiction by way of a motion to dismiss filed under Rule 12(b)(1), the district court may regard the pleadings as evidence on the issue and also may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004). Nevertheless, "[t]he court should grant the 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Biktasheva, 366 F. Supp. 2d at 294 (citation omitted). When a plaintiff's claim is challenged on the ground that there is not a sufficient amount in controversy, "it must appear to a *legal certainty* that the claim is really for less than the jurisdictional amount" in order to justify dismissal of the claim. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938) (emphasis added). "[W]here a Plaintiff's allegations of jurisdictional facts are challenged, the Plaintiff must support them by competent proof." Patrick v. Sharon Steel Corp., 549 F. Supp. 1259, 1261 (N.D. W. Va. 1982). "But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount

claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." St. Paul Mercury, 303 U.S. at 289. "[W]hile good faith [of the plaintiff's original claimed jurisdictional amount] is a salient factor, it alone does not control; for if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction . . . . However, the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." Wiggins v. N. Am. Equitable Life Assur. Co., 644 F.2d 1014, 1017 (4th Cir. 1981) (citing McDonald v. Patton, 240 F.2d 424, 426 (4th Cir. 1957)).

With these principles in mind, it appears that the Plaintiff has not satisfied the amount in controversy threshold under 28 U.S.C. § 1332(a) in relation to the three causes of action in this matter: (1) payment by mistake; (2) unjust enrichment/monies paid and received; and (3) conversion. Walters contends that under each of these theories, he can only be liable as a matter of law for those sums from which he mistakenly or unjustly benefitted, and he further contends that the total amount he received and from which he benefited after his separation from employment cannot exceed

$57,259.79. Having reviewed the elements of each cause of action and the pleadings and exhibits, the Court concludes that Walters is correct.

"Virginia has long recognized the right to recover money paid by mistake of fact." Hilliard v. Fox, 735 F. Supp. 674, 676 (W.D. Va. 1990) (citing W.B. Hibbs & Co. v. First Nat'l Bank of Alexandria, 133 Va. 94, 105-06, 112 S.E. 669, 673 (1922)). "The right 'is based upon the promise to return the money which the law implies, irrespective of any actual promise, and even against the refusal to make it, whenever the circumstances are such that *ex aequo et bono* the money should be paid back, but in such case only.'" Id. (quoting W.B. Hibbs & Co., 133 Va. at 105-06, 112 S.E. at 673. Noting that the Supreme Court of Virginia has cited the Restatement of Restitution as authority, the district court also quotes the Restatement: "A person who has paid money to another because of an erroneous belief induced by a mistake of fact . . . is entitled to restitution *of the amount so paid* . . . ." Hilliard, 735 F. Supp. at 676-77 (emphasis added).

A claim for unjust enrichment is quasi-contractual in nature and requires a plaintiff to show: (1) it conferred a benefit on the defendant; (2) the defendant "knew of the benefit and should reasonably have expected to repay [the plaintiff];" and (3) the defendant "accepted or retained the benefit without

7

paying for its value." Schmidt v. Household Finance Corp., 276 Va. 108, 116, 661 S.E.2d 834, 838 (Va. 2008) (citation omitted).

Conversion "encompasses 'any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it.'" PGI, Inc. v. Rathe Prod., Inc., 265 Va. 334, 344, 576 S.E.2d 438, 443 (Va. 2003) (citations omitted). While "[i]n general, a cause of action for conversion applies only to tangible personal property," United Leasing Corp. v. Thrift Ins. Corp., 247 Va. 299, 305, 440 S.E.2d 902, 906 (1994), but money can be the subject of conversion as it was in PGI, Inc. v. Rathe Prod., Inc. in which settlement proceeds in the amount of $250,000 were wrongfully withheld.

Regardless of the cause of action, the amount for which the Defendant can be liable is limited to the amount paid to him or the amount of the benefit accepted by the Defendant if he knew of the benefit. In this case, during the period in question, Walters received $61,158.51 in net pay but returned $3,898.72 to Willis. This is confirmed by Exhibit A to the Secrist Affidavit, attached to Plaintiff's Response. Thus, Walters received and kept $57,259.79.

With regard to other amounts at issue, those involving taxes and benefits, an examination of Exhibit A to the Secrist Affidavit, attached to Plaintiff's Response, and the Corrected Wage and Tax Statement (Form W-2c (Rev. 1-2006)) attached as Exhibit B to Def.'s Mem. in Supp. of Mot. to Dismiss for Lack of S.M.J. clarifies those amounts and demonstrates conclusively that Walters did not receive the benefit of any of those withholdings or insurance benefits. The Corrected Wage and Tax Statement, Plaintiff's own record sent to the Defendant on March 3, 2010, shows a significant reduction in the amounts it initially reported to the Internal Revenue Service as wages, taxes withheld, and 401(k) contributions.

On Exhibit A, Willis lists federal income tax withheld in the amount of $14,499.61 for the period from February 16, 2009 through October 15, 2009, the time period at issue. However, the Corrected Wage and Tax Statement shows that the federal income tax withheld initially for 2009 was $17,442.82, and that the corrected amount actually withheld was only $3,309.64.

Likewise, as to Social Security tax withheld, on Exhibit A to Plaintiff's Response, Willis lists Social Security tax withheld in the amount of $5,563.39 for the period from February 16, 2009 through October 15, 2009, the time period at issue, but the Corrected Wage and Tax Statement shows that the amount withheld

initially for 2009 was $6,349.23, and that the corrected amount actually withheld was only $1,253.49.

As to Medicare tax withheld, Exhibit A lists the amount withheld for the time period at issue as $1,319.92, but the Corrected Wage and Tax Statement shows that the amount withheld initially for 2009 was $1,484.90, and that the corrected amount actually withheld was only $293.16.

As to state income tax, Exhibit A lists the amount withheld for the time period at issue as $4,423.65, but the Corrected Wage and Tax Statement shows that the amount withheld initially for 2009 was $5,308.38, and that the corrected amount actually withheld was only $1,066.52.

Finally, as to the contribution to Walters' 401(k), the Corrected Wage and Tax Statement shows that $3,082.50 was contributed initially in 2009 but after Willis withdrew part of that contribution plus earnings from Walters' account, the amount actually contributed to Walters' 401(k) plan in 2009 was $513.75.

Given that the Corrected Wage and Tax Statement, Plaintiff's own record, was sent to Walters and presumably filed with the Internal Revenue Service along with Form W-3c (Rev. 1-2006) which is the form used to transmit a copy of Form W-2c, and that Form W-3c must be signed "under penalties of perjury," the Court finds that the Corrected Wage and Tax Statement must therefore reflect

the amount of taxes and the 401(k) contribution actually paid on behalf of Walters for 2009, all of which was based on his salary for the period from January 1, 2009 through February 15, 2009, not the time period at issue in this action. Thus, the amounts actually withheld for taxes - federal, state, Social Security and Medicare - and the 401(k) contribution actually made on Walters' behalf are not relevant to the time period at issue in this action - from February 16, 2009 through October 15, 2009.

In the supplemental briefing, Willis cites Louisiana Specialty Hosp. LLC v. Adams, 2010 WL 3211077 (E.D. La. 2010), for the proposition that the amounts paid to the government for taxes on behalf of the defendant should be included in the measure of the amount in controversy. Adams, as noted by Walters in his supplemental response, is based on a Louisiana statute that is unique to the state of Louisiana, codified at Louisiana Civil Code Article 2298 ("Article 2298"). The statute allows for recovery of either the amount the defendant was enriched or the amount the plaintiff was damaged. But, as also stated in Adams, "To determine the value of the matter in controversy, the Court must 'look to state law to determine the nature and extent of the right to be enforced in a diversity case.'" Adams at *3 (quoting Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352-53 (1961). Article 2298 is very different from the causes of action alleged by Willis under

Virginia law. Article 2298 states in relevant part: "A person who has been enriched without cause at the expense of another person is bound to compensate that person . . . . The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less." The Virginia causes of action look to the amount paid to the defendant or the amount of the benefit accepted by the defendant if he knew of the benefit. The parties agree that the Defendant was paid and he retained $57,259.79. The Plaintiff's own record, the Corrected Wage and Tax Statement, establishes the amounts of taxes actually withheld by the Plaintiff and the amount of the 401(k) contribution paid for the Defendant and establishes that these amounts were based on Walters' salary for the period from January 1, 2009 through February 15, 2009, not the time period at issue in this action. Thus, as noted previously, the amounts actually withheld for taxes – federal, state, Social Security and Medicare – and the 401(k) contribution actually made are not relevant to the time period at issue in this action – from February 16, 2009 through October 15, 2009, and these amounts cannot be added to the $57,259.79 amount paid to Walters.

In addition to the taxes and the 401(k) contributions, Exhibit A also lists deductions for medical, dental and vision health insurance for the time period at issue. These amounts

12

total $2,771.70. But, as demonstrated by Exhibit C to Def.'s Mem. in Supp. of Mot. to Dismiss for Lack of S.M.J., Willis informed Walters that his medical, dental, and vision insurance was terminated effective February 16, 2009 and that he could purchase COBRA benefits to cover his health insurance needs for the period after February 16, 2009. Walters never used any such benefits during this time period nor was he aware that such benefits were available for his use. Even if Willis had paid $2,771.70 for benefits for Walters and had not thereafter retroactively terminated those benefits, this amount, if added to the $57,259.79, would not satisfy the required jurisdictional amount. Thus, it appears "*to a legal certainty*" that the amount for which the Defendant could be liable and the Plaintiff could recover cannot satisfy the required jurisdictional amount and, on that basis, this matter will be dismissed for lack of subject matter jurisdiction.

An appropriate order shall issue.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 30, 2011